UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ROBERT C. LEE,

                Plaintiff,

    -v-                             6:10-CV-1446

CITY OF UTICA, NEW YORK; CITY OF
UTICA POLICE DEPARTMENT; SCOTT M.
BERGER, individually and in his official
capacity as a police officer of the City of
Utica, New York; and MARK WILLIAMS,
individually and in his official capacity as
Chief of Police of the City of Utica, New York
Police Department,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

FELT EVANS, LLP                   JAY G. WILLIAMS, III, ESQ.
Attorneys for Plaintiff
4-6 North Park Row
Clinton, NY  13323

OFFICE OF CORPORATION COUNSEL—     JOHN P. ORILIO, ESQ.
   CITY OF UTICA                 MARK C. CURLEY, ESQ.
Attorneys for Defendants
One Kennedy Plaza
Utica, NY  13502


DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

On December 1, 2010, plaintiff Robert C. Lee ("plaintiff" or "Lee") filed this action against defendants the City of Utica; the City of Utica Police Department ("UPD")[1]; UPD Officer Scott M. Berger ("Berger"); and UPD Chief Mark Williams.  Plaintiff brings federal claims pursuant to 42 U.S.C. § 1983 alleging excessive force (First and Second Cause of Action), deprivation of substantive due process (Third Cause of Action), and failure to supervise and train (Fourth and Fifth Causes of Action).  He also brings six pendent state claims (Sixth through Eleventh Causes of Action).[2]

Plaintiff has filed a motion seeking summary judgment on the federal excessive force claim only and, if his motion is granted, an inquest as to damages on this single claim.  Defendants have responded, and plaintiff replied.  In an affidavit filed with their response, defendants assert that they should be granted summary judgment and are entitled to qualified immunity.  However, defendants have not made a formal cross-motion for summary judgment, and, therefore, there is no motion pending on their behalf.

Oral argument was heard on August 3, 2012, in Utica, New York.  Decision was reserved.

---

[1]  The UPD will be dismissed as it is essentially the same municipal entity as the City of Utica.  The Clerk of the Court is directed to remove the City of Utica Police Department from the caption.

[2]  It is unclear why plaintiff grouped some claims into two causes of action in the complaint.

## II.  FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed.[3]  On the evening of May 27, 2010, Lee attended "Saranac Thursday"—a weekly outdoor summer event sponsored by a local brewery on Varick Street in Utica, New York.  Lee drank at least four beers prior to or during this event.  At approximately 11:30 p.m. Berger and his partner observed plaintiff holding an open bottle of beer on the sidewalk in front of The Celtic Harp, a bar on Varick Street.  When the officers approached, Lee fled on his skateboard.  Lee circled the block, finished his beer, discarded the empty bottle, and returned to the front of The Celtic Harp.  Several minutes later Berger approached him and asked for identification.  Lee complied.

Berger advised Lee that he would be issued a ticket for having an open container of alcohol in public—a violation.  Berger then grabbed plaintiff's left elbow and began escorting him to a mobile command post to process the paperwork.  While walking to the command post, plaintiff shoved Berger in the chest with his right hand.  After a brief struggle, Berger and his partner handcuffed Lee behind his back and advised that he was now under arrest for harassment in the second degree and resisting arrest.[4]  Shortly thereafter Lee broke free from Berger's grasp and began running down the center of Varick Street, which was crowded with pedestrians and remained open to vehicular traffic.  Berger gave chase, ordered Lee to stop, and warned that he would be tased.  Berger maintains that he yelled "Taser, Taser,

---

[3]  Defendants did not specifically respond to plaintiff's statement of material facts, but instead filed their own statement of material facts.  Therefore, whether a fact is in dispute has been determined by comparing the statements of material facts and analyzing the parties' respective legal arguments.

[4]  As neither party submitted the police reports, it is unclear which specific sections of the New York Penal Law Lee was ultimately charged with violating.  However, harassment in the second degree is a violation according to New York Penal Law section 240.26.  Resisting arrest is a class A misdemeanor according to New York Penal Law section 205.30.

Taser" per UPD policy to warn Lee and bystanders that he would deploy the Taser.

Lee claims that he was "high-stepping" away from Berger in a mocking fashion, not running at full speed, and ran only ten feet before Berger deployed his Taser. Defendants assert that plaintiff ran at least forty feet and was outrunning Berger. Berger fired the Taser from approximately twelve feet behind Lee. The Taser electrodes struck plaintiff in the back, and he fell prone upon the pavement. Lee briefly lost consciousness, suffered physical injuries to his face,[5] and vomited. He was transported by ambulance to a local hospital, where he was treated and released. Upon his discharge from the hospital, Lee was provided with prescriptions for two medications, but he never filled either one. Likewise, he was advised to schedule a follow-up medical appointment but never did so. Nor did he see a dentist after the incident. Lee estimates his total medical expenses, including the ambulance service, to be approximately $4200.

Plaintiff was ultimately charged with—and pled guilty to—harassment and escape. The UPD reviewed Berger's use of force and deemed it justified and in compliance with UPD policy, but he was reprimanded for failure to maintain control over an arrestee. As a result of this incident, the UPD changed the procedure to be used when transporting an arrestee at Saranac Thursday.

In October 2009, seven months prior to this incident, the Taser manufacturer issued a training bulletin warning that the use of a Taser may render a person unable to control their movements or prevent a fall. Especially at risk is someone who "is less able to catch or

---

[5] Lee claims that he sustained a broken nose and loosened teeth. In his deposition, Sgt. Samuel Geddes of the UPD maintained that Lee suffered a right orbital fracture. Neither party submitted the medical records. A photograph submitted with plaintiff's motion paperwork shows him lying face-down on the street with his hands behind his back and obvious injuries to his face.

protect [him]self in a fall (e.g. restrained, handcuffed)" or "is running, in motion, or moving

under momentum."  Williams Decl., Ex. I, ECF No. 21-13, 20.[6]  The UPD's Taser policy does

not specifically prohibit using the device on someone who is handcuffed or running.  It

instead bars use, absent exigent circumstances, on "any subject who may receive a

secondary injury resulting from a fall . . . (i.e. subject on balcony, rooftop, ledge, top of stairs,

in tree, etc.)."  Williams Decl., Ex. K, ECF No. 21-15, 6.  Berger was a Taser instructor for the

UPD at the time of this incident and had been trained by the Taser manufacturer directly.

## III.  DISCUSSION

### A.  Motion for Summary Judgment—Legal Standard

The entry of summary judgment is warranted when "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548,

2552 (1986) (citing Fed. R. Civ. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 247, 106 S. Ct. 2505, 2509–10 (1986).  A fact is "material" for purposes of this inquiry if

it "might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248,

106 S. Ct. at 2510; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005).

A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.

When summary judgment is sought, the moving party bears the initial burden of

demonstrating that there is no genuine issue of material fact to be decided with respect to

---

[6]  The pagination corresponds to the page numbers as assigned on CM/ECF.  This convention will be used throughout the order for citations to exhibits.

any essential element of the claim.  Id. at 250 n.4, 106 S. Ct. at 2511 n.4.  The failure to

meet this burden warrants denial of the motion.  Id.  In the event this initial burden is met, the

opposing party must show, through affidavits or otherwise, that there is a material issue of

fact for trial.  Id. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities

and draw all inferences from the facts in a light most favorable to the nonmoving party.

Jeffreys, 426 F.3d at 553.  Summary judgment is inappropriate where "review of the record

reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."

Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see also

Anderson, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when

"there can be but one reasonable conclusion as to the verdict").

## B.  Substantive Due Process (Third Cause of Action)

Although defendants did not file a motion for summary judgment, the substantive due

process claim will be dismissed sua sponte.  Indeed, "all claims that law enforcement officers

have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or

other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its

'reasonableness' standard, rather than under a 'substantive due process' approach."

Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871 (1989).  Thus, "if a

constitutional claim is covered by a specific constitutional provision, such as the Fourth or

Eighth Amendment, the claim must be analyzed under the standard appropriate to that

specific provision, not under the rubric of substantive due process."  Cnty. of Sacramento v.

Lewis, 523 U.S. 833, 843, 118 S. Ct. 1708, 1715 (1998) (internal quotation marks omitted);

see also Butler v. City of Glens Falls, No. 1:10-CV-679, 2012 WL 171584, at *9 (N.D.N.Y.

Jan. 20, 2012) (Mordue, C.J.).

Accordingly, the substantive due process claim will be dismissed.

## C. Excessive Force (First and Second Causes of Action)

Lee alleges that Berger's use of the Taser constituted excessive force in violation of the Fourth Amendment.  Defendants maintain that Berger's use of force was reasonable given the totality of the circumstances.

A claim of excessive force "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  Graham, 490 U.S. at 396, 109 S. Ct. at 1871 (internal quotation marks omitted).  When considering if the degree of force used to effect a seizure was excessive, "the factfinder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time."  Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 123 (2d Cir. 2004).  This requires a case-specific review of the facts and consideration of various factors, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham, 490 U.S. at 396, 109 S. Ct. at 1872.  Further, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id.

Defendants rely entirely on Crowell v. Kirkpatrick, 400 F. App'x 592 (2d Cir. 2010), to support their argument that Berger's use of a Taser was reasonable.[7]  The plaintiffs in

---

[7]  Not only is this case distinguishable, it is an unpublished decision that is therefore not binding.

Crowell were protesters who resisted arrest by chaining themselves to a barrel in such a fashion that prevented their arrest and removal by "conventional means." Id. at 595. The defendant officers ultimately used Tasers to subdue and arrest the protesters. Id. This use of force was deemed objectively reasonable as a matter of law. Id. In that case, however, the protesters had summoned other members of their group to the scene for assistance, thus creating a sense of urgency to remove them before the others arrived. Id. The officers also provided repeated opportunities for the plaintiffs to voluntarily unchain themselves and leave peacefully. Id. Finally, the officers attempted various alternative means of removing the plaintiffs and set their Tasers on "drive stun" mode to minimize the effects of the shock. Id. Most importantly, the plaintiffs' physical position did not put them at risk of falling or suffering a secondary injury upon being tased.

Here, Berger could have attempted to apprehend Lee by more conventional means—such as chasing him down or radioing for assistance. Instead, he quickly resorted to tasing Lee. Further, Berger fully deployed the Taser electrodes as opposed to using the less-intense "drive stun" mode employed by the officers in Crowell. Finally, Lee was at obvious risk of falling upon being tased, unlike passive protesters chained to a barrel. Crowell is therefore distinguishable and inapposite.

This particular matter involves a police officer's use of a Taser on a fleeing, non-violent misdemeanant who has been handcuffed behind his back. This presents a unique set of facts that have not been squarely addressed in previous cases involving the use of Tasers. A review of the relevant case law generally suggests: (1) it is objectively unreasonable to tase a compliant suspect or an arrestee who is already handcuffed and secured; but (2) it is reasonable to tase a fleeing or unruly suspect who has not yet been

handcuffed or otherwise secured.  See Cavanaugh v. Woods Cross City, 625 F.3d 661, 665 (10th Cir. 2010) (tasing non-resistant suspect was excessive force); Jones v. King, No. 10 Civ. 0897, 2011 WL 4484360, at *8 (S.D.N.Y. Sept. 28, 2011) (reasonable jury could conclude that using a Taser on an arrestee handcuffed to a bench amounted to excessive force); but see Hagans v. Franklin Cnty. Sheriff's Office, 695 F.3d 505, 509 (6th Cir. 2012) ("If a suspect actively resists arrest and refuses to be handcuffed, officers do not violate the Fourth Amendment by using a taser to subdue him."); McKenney v. Harrison, 635 F.3d 354, 360 (8th Cir. 2011) (tasing unsecured misdemeanant who made sudden move toward window while being questioned by police did not constitute excessive force, even though he then fell out of window to his death); United States ex rel. Thompson v. Vill. of Spring Valley, No. 05 Civ. 2005, 2006 WL 1889912, at *4 (S.D.N.Y. July 10, 2006) (finding it reasonable for officer to tase suspect who had pushed away from the officer and fled but had not been handcuffed).  This case does not fit into either category.

At the time he was tased, Lee had already been detained once and was handcuffed behind his back.  He was under arrest for possessing an open container of alcohol in public, harassment in the second degree for shoving Berger, and resisting arrest for struggling against being handcuffed.  The open container and harassment violations are minor infractions, and Lee's physical resistance was relatively minor and constituted a misdemeanor.  Neither Berger nor his partner were injured in the brief scuffle with plaintiff. Nor can defendants seriously contend that Lee posed a serious immediate threat to the officers or the general public as he attempted to run away while intoxicated and handcuffed behind his back.  In addition, the downtown area where this event took place was flooded with UPD officers on the night of the incident.  Indeed, Berger testified that "everyone is

working" during Saranac Thursday.  Williams Decl., Ex. E, ECF No. 21-9, 13:5–6.  Other

UPD personnel testified that at least ten officers normally work this event.

Further, the Taser manufacturer warned against tasing someone who is handcuffed or

running, and the UPD's policy prohibited using the device—absent exigent circumstances—

on someone at risk of being injured by a secondary fall.  Someone running away with his

hands secured behind his back is at an obvious risk of injury from falling.  In his deposition,

Berger acknowledged that tasing Lee while he was running increased the likelihood that he

would be injured.

On the other hand, shoving a police officer and struggling against being handcuffed is

not an insignificant offense, and it is undisputed that Lee was actively resisting and

attempting to evade Berger's control by pushing him and running away.  Plaintiff testified that

he was "reluctant" and "hesitant" to follow Berger's commands.  Williams Decl., Ex. C, ECF

No. 21-6, 33:4–7.  He admittedly "shoved" Berger, "yanked [his] arm free," and "ran."  Id. at

33:23, 35:21–22.  Surely an officer can be expected to use some level of force to apprehend

a person who attempts to flee after being placed under arrest.

Also, the UPD policy prohibits using a Taser on someone at risk of falling from an

elevated position, such as from a rooftop or balcony, not from a standing position.  Moreover,

viewing the facts in the light most favorable to defendants, Berger gave chase for at least

forty feet and Lee was outrunning him in the center of a crowded roadway that was open to

vehicular traffic late at night.  Using the Taser allowed Berger to apprehend Lee quicker than

chasing him down.  Even if Berger could have caught up with Lee, using the Taser arguably

presented less risk of injury than tackling him and minimized the risk of harm to Berger.

Finally, prior to deploying the Taser, Berger issued repeated warnings which Lee ignored.

In short, the totality of the circumstances presents an issue of material fact as to whether Berger's use of the Taser was objectively reasonable.  Accordingly, plaintiff's motion for partial summary judgment will be denied.

## IV.  CONCLUSION

Claims that police officers have used excessive force to effect a seizure must be analyzed under the "reasonableness" standard of the Fourth Amendment, not under a substantive due process standard.  There remains an issue of material fact as to whether Berger's use of a Taser on Lee as Lee ran away with his hands secured behind his back was objectively reasonable or constituted excessive force in violation of the Fourth Amendment. It is again noted that plaintiff's motion for partial summary judgment is solely based upon the excessive force claim in the First and Second Causes of Action, and there are no motions pending by the defendants.

Therefore, it is

ORDERED that

1.  Plaintiff's motion for partial summary judgment is DENIED;

2.  The substantive due process claim (Third Cause of Action) is DISMISSED;

3.  All other causes of action remain for trial; and

4.  The trial will commence on May 13, 2013, at 9:30 a.m. in Utica, New York.  Pretrial submissions shall be filed on or before May 1, 2013, at noon.

IT IS SO ORDERED.

United States District Judge

Dated:  March 5, 2013
         Utica, New York.

- 11 -